SHAHNAZ NAZAMI *v.* PATRONS MUTUAL
INSURANCE COMPANY ET AL.
(SC 17537)
(SC 17539)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 7—officially released December 5, 2006

*Zenas Zelotes*, for the appellant (plaintiff).

*Michael P. Del Sole*, for the appellee (defendant Fallon Insurance Agency, Inc.).

*Jack G. Steigelfest*, for the appellee (named defendant).

*Opinion*

ZARELLA, J. The plaintiff, Shahnaz Nazami, appeals from the judgment of the trial court rendered in favor of the named defendant, Patrons Mutual Insurance Company (Patrons) and its agent, the defendant Fallon Insurance Agency, Inc. (Fallon). The plaintiff claims that the trial court improperly struck the second and fifth counts of her complaint because she sufficiently had alleged: (1) a cause of action against Fallon under the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., as well as an action in common-law fraud and negligent misrepresentation; and (2) a cause of action against Fallon and Patrons in common-law negligence. Specifically, the plaintiff contends that the trial court improperly determined that Fallon's issuance of a certificate of liability insurance outlining the insurance coverage of the plaintiff's home improvement contractor and Patrons' subsequent cancellation of the policy without notice to the plaintiff were insufficient to support such causes of action. We

disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On or about May 15, 2001, Virgil Gifford, a local home improvement contractor, obtained a general liability insurance policy from Patrons, through Fallon, for his home improvement business in Norwich. On June 7, 2001, Fallon issued a certificate of liability insurance (certificate) to Gifford naming the plaintiff as the "certificate holder." The certificate, which was issued, according to its terms, "as a matter of information only," outlined the liability limits, term and specific disclaimers of liability of the policy as of June 7, 2001. The certificate specifically noted that the policy had taken effect on May 15, 2001, and would expire on May 15, 2002. The certificate further provided that the "issuing insurer" would "endeavor to mail" ten days written notice to the plaintiff should the policy be cancelled before the expiration date. The certificate, however, disclaimed liability therein in the event that notice was not mailed. In addition, the certificate provided that it "confer[red] no rights upon" the plaintiff, did not constitute a contract between Patrons, Fallon and the plaintiff, and was subject to "all the terms, exclusions and conditions" of the policy.

On November 23, 2001, almost six months following the issuance of the certificate, and after the insurance policy had been cancelled without the plaintiff's knowledge, the plaintiff signed a contract with Gifford to renovate her home. Shortly after signing the home improvement contract, Gifford commenced work on the plaintiff's home. In the course of his work, Gifford left uncovered portions of the exterior walls of the plaintiff's home during a winter storm, which ultimately led to water damage within the home. The plaintiff subsequently filed a claim for damages and was

informed that Gifford's policy had been cancelled due to nonpayment of premiums.

Thereafter, the plaintiff brought an action against Gifford, Patrons and Fallon to recover for the damage to her home. The operative complaint contained five counts.[1] The plaintiff alleged in count two that she had signed the home improvement contract with Gifford in reliance on the certificate and that Fallon "knew, or should have known, that the [c]ertificate, as drafted, might lead [the plaintiff] to believe that . . . Gifford's insurance coverage was guaranteed until the policy expiration date." The plaintiff alleged that this conduct constituted common-law fraud, negligent misrepresentation, and violations of CUIPA[2] and CUTPA.[3] The plaintiff alleged in count five of her complaint that the failure of Fallon or Patrons to notify the plaintiff of the cancellation of the policy constituted common-law negligence.

Fallon and Patrons filed motions to strike, inter alia, counts two and five of the plaintiff's complaint,[4] which the trial court granted. The court concluded that the plaintiff had failed to state claims under CUIPA and CUTPA in count two because she did not have a first party relationship with Patrons or Fallon. The trial court

[1] Counts two and five of the plaintiff's complaint are the only counts at issue in this appeal.

In count one of the complaint, the plaintiff alleged common-law negligence against Gifford. In count three, the plaintiff alleged a violation of CUTPA against Fallon and Patrons. In count four, which was directed at Gifford, the plaintiff alleged common-law fraud and a CUTPA violation.

[2] General Statutes § 38a-816 (1) provides in relevant part that "[m]aking . . . [or] issuing . . . any . . . statement . . . which: (a) Misrepresents the benefits, advantages, conditions or terms of any insurance policy" constitutes an unfair and deceptive act or practice in the business of insurance.

[3] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[4] Fallon sought to strike counts two and five whereas Patrons sought to strike count five. Count two of the plaintiff's complaint was directed only at Fallon.

further concluded that the plaintiff had failed to state a cause of action for common-law fraud or negligent misrepresentation. With respect to the fifth count, the court concluded that neither Patrons nor Fallon owed the plaintiff a duty to inform her of the cancellation of Gifford's policy under a theory of negligence. The trial court thereafter granted Patrons' and Fallon's motions for judgment and rendered judgment thereon for Patrons and Fallon, from which the plaintiff appealed[5] to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The plaintiff first claims that the trial court improperly struck the second count of her complaint. Fallon and Patrons respond that the plaintiff failed to allege facts that would support a claim under CUIPA or CUTPA, or a cause of action for common-law fraud or negligent misrepresentation. We agree with Fallon and Patrons.

We begin with the applicable standard of review. "A motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court." (Internal quotation marks omitted.) *Greco* v. *United Technologies Corp.*, 277 Conn. 337, 347, 890 A.2d 1269 (2006). Therefore, our review of the court's rulings on Fallon's and Patrons' motions to strike is plenary. E.g., id. "We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . .

---

[5] The plaintiff filed separate appeals from the judgment of the trial court, presumably because Fallon and Patrons filed separate motions to strike and separate motions for judgment, and because two different trial judges acted on the respective motions to strike. The appeals subsequently were consolidated by order of this court. In the interest of simplicity, we refer to the plaintiff's separate appeals as one appeal.

"[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly . . . rather than narrowly." (Internal quotation marks omitted.) Id.

## A

We first examine whether the plaintiff alleged facts sufficient to support a cause of action under CUIPA or CUTPA. In order to resolve this issue, we must determine whether the conduct alleged in count two constitutes a violation of General Statutes § 38a-816 (1) (a).[6]

It is well established that CUTPA affords a private cause of action to individuals. E.g., *Fink* v. *Golenbock*, 238 Conn. 183, 212, 680 A.2d 1243 (1996) ("CUTPA provides a private cause of action to '[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice' "), quoting General Statutes § 42-110g (a). In *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986), this court determined that individuals may bring an action under CUTPA for violations of CUIPA. In order to sustain a CUIPA cause of action under CUTPA, a plaintiff must allege conduct that is proscribed by CUIPA.

Even if we assume, without deciding, that a certificate of insurance is an "estimate, illustration, circular or statement, sales presentation, omission or comparison" within the meaning of § 38a-816 (1), the plaintiff has failed to allege facts that constitute a misrepresentation under that statute. "Section 38a-816 (1) prohibits mis-

---

[6] In the second count of her complaint, the plaintiff alleged violations of subdivisions (1) (a) and (6) (a) of § 38a-816. On appeal, the plaintiff does not seek review of her claim under § 38a-816 (6) (a), which addresses unfair claim settlement practices.

representations and false advertising of insurance policies." *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 794, 653 A.2d 122 (1995). Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result. *Glazer* v. *Dress Barn, Inc.*, 274 Conn. 33, 73, 873 A.2d 929 (2005).

In order to determine whether the plaintiff sufficiently alleged misrepresentations within the meaning of § 38a-816 (1) (a), we must examine each allegation made in count two of the plaintiff's complaint. The plaintiff first alleged in count two that Fallon "knew, or should have known, that the [c]ertificate, as drafted, might lead the [plaintiff] to believe that . . . Gifford's insurance coverage was guaranteed until the policy expiration date." The plaintiff also alleged that the certificate "led [her] to believe that . . . Gifford's insurance was guaranteed until the policy expiration date" and that "the [c]ertificate was deceptive insofar as the policy effective date and policy expiration date, when read together, would likely lead the least reasonable person to misconstrue the [c]ertificate as representing that Gifford had secured insurance coverage for a full year." (Internal quotation marks omitted.) The plaintiff further alleged in count two that Fallon knew, or should have known, that the plaintiff "might suffer a detriment" due to her reliance on the certificate. The allegations in count two did not refer to any representations other than those contained in the certificate.

We conclude that the foregoing allegations are in direct conflict with the language of the certificate, which was attached to the complaint and incorporated by reference therein. For example, it is clear that the policy expiration date and the possibility of cancellation

are two distinct events contemplated by the language of the certificate. Although the certificate provided that the policy took effect on May 15, 2001, and would expire on May 15, 2002, it also explicitly disclaimed any liability in the event that the policy was cancelled. Indeed, the certificate specifically noted that the stated coverage was subject to "all the terms, exclusions and conditions" of the policy.

Furthermore, the certificate contemplated cancellation in providing that, "[s]hould any of the above described policies be *cancelled before the expiration date* thereof, the issuing insurer will endeavor to mail [ten] days written notice to the certificate holder . . . ." (Emphasis added.) In short, the certificate specifically and repeatedly distinguished between expiration and cancellation of the policy. Consequently, the allegations contained in count two of the plaintiff's complaint failed to state a cause of action under § 38a-816 (1) (a) inasmuch as the statements made in the certificate did not misrepresent any facts.

The plaintiff also alleged in the second count of her complaint that Fallon, in issuing the certificate, "misrepresented terms and/or conditions relating to the policy . . . [and] violated [CUIPA] . . . ." This claim is merely an amalgam of the other allegations in count two and must fail for all of the reasons that we previously have stated. We therefore conclude that, read broadly and construed in a manner most favorable to sustaining its legal sufficiency, the plaintiff failed to allege sufficiently a violation of § 38a-816 (1) (a) in count two of her complaint.

B

We next address the plaintiff's claims of common-law fraud and negligent misrepresentation. Having concluded in part I A of this opinion that the plaintiff failed to allege sufficiently any misrepresentation on the part

of Fallon, we turn to the question of whether the plaintiff alleged facts sufficient to support her claim of common-law fraud in the second count of her complaint. Although the plaintiff argues that she has alleged "common-law theories" of fraud, it is clear on the face of the complaint that no such claims were made.

In order to plead a cause of action for fraud, a plaintiff must allege that: "(1) a false representation was made [by the defendant] as a statement of fact; (2) the statement was untrue and known to be so by [the defendant]; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005). Furthermore, when "a claim for damages is based upon fraud, the mere allegation that a fraud has been perpetrated is insufficient; the specific acts relied upon must be set forth in the complaint." *Maruca* v. *Phillips*, 139 Conn. 79, 81, 90 A.2d 159 (1952).

As we previously noted, the allegations in the second count of the plaintiff's complaint merely indicate that Fallon "knew, or should have known," that the certificate might lead the plaintiff to believe that Gifford's insurance coverage was guaranteed until the policy expiration date and, therefore, that the certificate was "deceptive." These allegations, however, do not satisfy the first two elements of common-law fraud. The plaintiff did not allege that the certificate contained a statement of fact that Fallon knew to be untrue. In fact, the certificate, on its face, specifically contemplates cancellation of the policy and alerts the certificate holder to the fact that the information contained therein is subject to all "terms, exclusions and conditions" of the policy. Moreover, the certificate does not provide that the policy was paid in full for the entire one year term or that it was in any way guaranteed. In other

words, the plaintiff failed to allege that any false statement was made in the certificate.

The plaintiff claims that, under our fact pleading jurisprudence, a common-law theory of liability "may independently sustain a cause of action" even if it is not specifically articulated. We disagree. Although we are mindful that our jurisprudence requires us to interpret pleadings broadly, we must construe them reasonably to contain all that they mean but not in such a way so as to "strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 174, 851 A.2d 1113 (2004).

Even the most liberal reading of the second count of the plaintiff's complaint does not reveal allegations sufficient to sustain a cause of action for common-law fraud. In fact, the only hint of such an allegation can be found in the heading of count two,[7] which is legally insufficient.[8] Accordingly, because the plaintiff failed to allege sufficiently any misrepresentations under CUIPA and CUTPA, and because she failed to allege facts sufficient to establish a common-law cause of action for fraud or negligent misrepresentation, we conclude that the trial court properly struck count two of the plaintiff's complaint.

[7] The heading of the second count of the plaintiff's complaint provides: "SECOND COUNT: Against Fallon Insurance Agency (CUIPA via CUTPA / Common Law Fraud) . . . ."

[8] We also note that the plaintiff failed to conform to Practice Book § 10-26, which provides that, when "separate and distinct causes of action, as distinguished from separate and distinct claims for relief founded on the same cause of action or transaction, are joined, the statement of the second shall be prefaced by the words Second Count, and so on for the others; and the several paragraphs of each count shall be numbered separately beginning in each count with the number one." In count two of her complaint, the plaintiff improperly combined her common-law fraud claim with her separate and distinct cause of action under CUIPA.

## II

The plaintiff next claims that the trial court improperly struck count five of her complaint, in which she alleged common-law negligence. The plaintiff contends that she alleged facts sufficient to sustain an action in negligence because Fallon and Patrons had a duty to inform her of the cancellation of Gifford's policy. Fallon and Patrons respond that, because the certificate of insurance created no duty to inform her of the cancellation, her negligence claim must fail. We agree with Fallon and Patrons.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 525, 832 A.2d 1180 (2003). "Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action." (Internal quotation marks omitted.) Id. Thus, "[t]here can be no actionable negligence . . . unless there exists a cognizable duty of care." *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). "The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant." (Citations omitted; internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 754, 792 A.2d 752 (2002). Furthermore, "[a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was

likely to result from his act or failure to act." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 547, 839 A.2d 1259 (2004).

The plaintiff concedes, and we agree, that the certificate is the only possible source of a duty of care in the present case. In other words, the plaintiff contends that Fallon and Patrons owed her a duty to inform her of the cancellation of Gifford's policy by virtue of the issuance of the certificate. This argument is without merit.

In order to determine whether a duty arose by virtue of the issuance of the certificate, we must examine the factual circumstances surrounding such issuance. In her complaint, the plaintiff failed to allege any facts that might have given rise to a duty of care by virtue of the issuance of the certificate. Furthermore, the certificate, which was attached to the complaint, eschews any relationship that would give rise to such a duty. Specifically, the certificate was issued as "a matter of information only," conferred "no rights upon" the plaintiff, and did not constitute a contract between Patrons, Fallon and the plaintiff. Even if we assume some contractual relationship was created by the issuance of the certificate that would have given rise to a duty, the certificate clearly disclaims any duty to inform the plaintiff. Although the certificate did provide that the "issuing insurer" would "endeavor to mail [ten] days written notice" to the plaintiff if the policy was cancelled before the expiration of the stated term, it also clearly disclaimed liability in the event that notice was not mailed. Accordingly, the trial court properly struck the fifth count of the plaintiff's complaint.

The judgment is affirmed.

In this opinion the other justices concurred.