PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY *v.* SCOTT
ANDERSON ET AL.
(AC 27470)

Gruendel, Lavine and West, Js.

Argued February 22—officially released May 29, 2007

*William J. Melley III*, for the appellant (plaintiff).

*Joseph J. Andriola*, with whom, on the brief, was *Daniel P. Scapellati*, for the appellee (third party defendant).

*Opinion*

LAVINE, J. In this action, an insurance carrier sought to recoup the proceeds it paid to its homeowner insureds for a loss they sustained due to the negligence of a general contractor. After obtaining a stipulated judgment against the general contractor, the insurance carrier sought, pursuant to General Statutes § 38a-321, to stand in the shoes of the general contractor to obtain indemnification under a policy of commercial risk insurance that had been issued to the contractor. The trial court granted the motion for summary judgment filed by the commercial risk insurer, concluding that there

was no genuine issue of material fact that the risk policy had been cancelled prior to the date of the homeowner's loss. The resolution of this appeal is controlled by § 38a-321 and *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 910 A.2d 209 (2006).

The plaintiff, Prudential Property and Casualty Insurance Company, appeals from the judgment of the court rendered in favor of the third party defendant, Zurich American Insurance Company (Zurich). On appeal, the plaintiff claims that the court improperly (1) rendered summary judgment in favor of Zurich, (2) found that the risk policy had been cancelled validly, (3) permitted Zurich to disclaim coverage despite its (a) having issued a certificate of risk insurance coverage (certificate) for the defendants,[1] (b) having failed to notify the plaintiff's insured that coverage had been cancelled, although the certificate required it to provide written notice of cancellation, and (c) having provided no means of notifying the plaintiff's insured that coverage had been cancelled. We disagree and affirm the judgment of the trial court.

There is no dispute as to the following facts. At all relevant times, the plaintiff provided homeowners' insurance protection to Michelle Leville and Kevin Leville for their residence in New Canaan. In the fall of 1999, the Levilles entered into an agreement with Scott Anderson and the Anderson Company, Inc., (collectively Anderson) to construct a second story to their home. Anderson presented the Levilles with a certificate of risk insurance dated November 9, 1999, that had been issued by an independent insurance agent, the William F. Malloy Agency, Inc. (Malloy).[2] On November

---

[1] The defendants are Scott Anderson and the Anderson Company, Inc., who are not parties to this appeal.

[2] During oral argument in this court, counsel for Zurich represented that the agent who provided the certificate was unknown to it. Zurich, however, attached to the motion for summary judgment copies of notices and correspondence it sent to Anderson and included them in the appendix to its appellate brief. Some of the correspondence indicates that courtesy copies were sent to Malloy, who is identified as the agent.

10, 1999, the Levilles sustained extensive water damage to their home because Anderson inadequately covered the roof of the house prior to a storm. The plaintiff paid the Levilles $199,385.37 under the homeowner's policy for the loss they sustained due to Anderson's negligence.

In April, 2001, the plaintiff brought a subrogation action against Anderson. The complaint alleged, in part, that "Anderson induced the [Levilles] to engage in a contract by giving a certificate of insurance regarding [insurance] coverage when [Anderson] knew or should have known that, in fact . . . coverage may well not have been in effect." Anderson was granted permission to implead Zurich as a third party defendant. In its third party complaint, Anderson alleged, in part, that Zurich had issued to it a contract of risk insurance for the period January, 1999, to January, 2000, and that Anderson had paid the premiums thereon.[3] Pursuant to the risk policy, Zurich had agreed to provide a defense and pay damages caused by Anderson's negligence. Anderson also alleged that Zurich had misled it with regard to its being insured at the time of the Levilles' loss. Zurich denied the allegations of the third party complaint, asserting that it had cancelled the risk policy on October 19, 1999, due to Anderson's failure to pay a premium due.[4]

On October 19, 2005, the plaintiff and Anderson stipulated that judgment may enter in favor of the plaintiff in the amount of $199,385.37. Thereafter, the plaintiff

[3] The risk policy actually was issued by Assurance Company of America, a wholly owned subsidiary of Zurich.

[4] On August 29, 1999, Zurich sent an invoice to Anderson for the premium due, advising that payment was required by September 19, 1999. Anderson made no payment. Zurich mailed Anderson a cancellation notice on September 29, 1999, stating that the risk policy would be cancelled if it did not receive $6158.70 by October 19, 1999. Anderson made one partial payment of $2000 on October 3, 1999. Anderson subsequently submitted additional partial payment via checks that were dishonored for lack of sufficient funds.

amended its complaint to assert a claim against Zurich pursuant to § 38a-321,[5] as the judgment against Anderson was thirty days old and had not been paid by Zurich. The plaintiff also alleged that Zurich had induced the Levilles to enter into an agreement with Anderson by permitting its agents to issue a certificate while maintaining that the risk policy was not in effect. In addition, the plaintiff alleged that Zurich's practice of issuing certificates without a validation safeguard was improper when it knew that persons such as the Levilles would rely on them. Finally, the plaintiff alleged that Zurich had a practice of using certificates for auditing purposes without verifying whether the certificates were used appropriately.

On March 6, 2006, Zurich filed a motion for summary judgment, claiming that there were no genuine issues of material fact that it properly cancelled the risk policy issued to Anderson prior to receiving notice of the Levilles' loss. Zurich argued that, pursuant to the risk policy and General Statutes § 38a-324,[6] it was entitled to cancel

---

[5] General Statutes § 38a-321 provides in relevant part: "Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of . . . damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty . . . . Upon the recovery of a final judgment against any person, firm or corporation by any person . . . if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[6] General Statutes § 38a-324 (a) provides in relevant part: "After a policy of commercial risk insurance . . . has been in effect for more than sixty days, or after the effective date of a renewal policy, no insurer may cancel any policy unless the cancellation is based on the occurrence, after the effective date of the policy or renewal, of one or more of the following conditions: (1) Nonpayment of premium . . . . If the basis for cancellation

the risk policy for nonpayment of premiums as long as it gave Anderson ten days notice. Zurich attached numerous documents to its motion for summary judgment to verify its assertion that the risk policy had been cancelled properly for nonpayment of premiums. Zurich also argued that, as a matter of law, it was entitled to summary judgment under the plaintiff's theory that the Levilles had been induced to enter into the agreement with Anderson because Zurich had issued a certificate when no insurance was in effect. Zurich argued that the plaintiff had no greater rights than Anderson and that Anderson was foreclosed from recovering under the risk policy because the policy had been cancelled before the Levilles' loss occurred.

The plaintiff objected to the motion for summary judgment even though it conceded that the risk policy properly was cancelled prior to the Levilles' loss because Zurich permitted its agents to issue a certificate to induce the Levilles to enter into an agreement with Anderson when there was no coverage. The plaintiff argued that it was seeking subrogation on equitable, not legal, grounds. Following a hearing on the motion for summary judgment, the court rendered summary judgment in favor of Zurich. The plaintiff appealed.

We will review the plaintiff's claims pursuant to the well established standards governing motions for summary judgment. "The [summary] judgment . . . shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light

is nonpayment of premium, at least ten days' advance notice shall be given and the insured may continue the coverage and avoid the effect of the cancellation by payment in full at any time prior to the effective date of cancellation. . . ."

most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Vaszil*, 279 Conn. 28, 34, 900 A.2d 513 (2006).

## I

The plaintiff's first claim is that the court improperly rendered summary judgment in favor of Zurich because it stands in Anderson's shoes, and, under the factual circumstances of this case, Anderson was entitled to believe that it effectively was covered by a policy of risk insurance because a certificate was issued on its behalf. We disagree.

In support of its claim, the plaintiff relies on Anderson's history of risk insurance coverage with Zurich, including the premium due in September, 1999, dishonored checks, correspondence and representations made by Malloy. See footnote 4. The plaintiff states in its brief that "[g]iven the lengthy history between the parties whereby [n]otices of [c]ancellation generated partial payments that resulted in . . . Zurich maintaining insurance on behalf of . . . Anderson . . . Anderson was entitled to rely upon [its] belief that the partial payments he made in the fourth quarter of 1999 sufficed to maintain [its] insurance coverage. The . . . Leville[s] [were] entitled to rely on Anderson that the insurance was effective. . . . Zurich should be estopped from denying that Anderson's insurance coverage was cancelled effective October 19, 1999." The plaintiff offers no law to support its claim.

The court decided Zurich's motion for summary judgment on a third party complaint alleging indemnification pursuant to § 38a-321, which provides in relevant

part that "[u]pon the recovery of a final judgment against any . . . corporation . . . on account of . . . damage to property, if the defendant in such action *was insured against such . . . damage at the time when the right of action arose . . . .*" (Emphasis added.) The relevant fact, therefore, is whether Anderson's risk policy was in effect on the date the Levilles sustained their property loss. The plaintiff concedes that Zurich properly cancelled the risk policy on October 19, 1999. The court, therefore, properly concluded that there is no genuine issue of material fact and that Zurich was entitled to summary judgment as a matter of law. The plaintiff claims that it stands in Anderson's shoes but fails to acknowledge that Anderson itself had no right to indemnification from Zurich because it had failed to pay the premium due and the policy was cancelled. See *Commercial Contractors Corp.* v. *American Ins. Co.*, 152 Conn. 31, 40, 202 A.2d 498 (1964). Simply put, there was no risk policy in effect on the date of the Levilles' loss.

The plaintiff's claim that it is entitled to indemnification for reasons of equity does not rest on firm ground either. In order to obtain equitable relief, one must act equitably. See *LaCroix* v. *LaCroix*, 189 Conn. 685, 689, 457 A.2d 1076 (1983). Anderson was not entitled to indemnification from Zurich because it did not pay the premium due and tried to make partial payment with checks that were dishonored. Because Anderson had no right to indemnification, and the plaintiff has no greater right, it is not entitled to indemnification.

We decline to address the second portion of the plaintiff's claim that Anderson's coverage history with Zurich and the business practices employed by Zurich and Malloy entitled Anderson to believe that partial payment of the premium due was enough to avoid the policy's being cancelled. The plaintiff did not raise it before the trial court, and we will not address it for the first time

here. See *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 27–28, 901 A.2d 649 (2006).

## II

The plaintiff's second set of claims concerns the certificate that Zurich permitted Malloy to issue to the Levilles. The plaintiff claims that the court improperly rendered summary judgment in favor of Zurich because Zurich never notified the Levilles that the risk policy had been cancelled, in keeping with the language of the certificate, and had no mechanism to inform certificate holders when the insurance had been cancelled. Because Zurich owed no duty to the Levilles or the plaintiff, the court properly rendered summary judgment.

The certificate, in part, contained the following language: "This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend or alter the coverage afforded by the policies below." Also, "[t]he policies of insurance listed below have been issued to the insured named above for the policy period indicated. Notwithstanding any requirement, term or condition of any contract or other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the policies described herein is subject to all the terms, exclusions and conditions of such policies. Aggregate limits shown may have been reduced by paid claims." Furthermore, the certificate addressed cancellation: "[s]hould any of the above described policies be cancelled before the expiration date thereof, the issuing insurer will endeavor to mail [ten] days written notice to the certificate holder named to the left, but failure to do so shall impose no obligation or liability of any kind upon the insurer, its agents or representatives." Kevin Leville is the certificate holder named, and neither of the Levilles

were notified that Anderson's risk policy had been cancelled.

In its brief, the plaintiff argues that "[u]nder all the facts and circumstances of this case, where a [c]ertificate of [i]nsurance was issued the day before a loss occurred and the . . . history of the parties indicated that insurance was maintained notwithstanding notices of cancellation . . . Anderson should be entitled to rely upon the fact that a [c]ertificate of [i]nsurance was issued as evidence that he was insured on the date of the loss." The plaintiff claims that Zurich should be estopped from denying it recovery. We are not persuaded.

"There are two essential elements to an estoppel— the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon the belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. . . . Further, [i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Citation omitted; internal quotation marks omitted.) *Green* v. *Connecticut Disposal Service, Inc.*, 62 Conn. App. 83, 91, 771 A.2d 137, cert. denied, 256 Conn. 912, 772 A.2d 1124 (2001).

As stated previously, the plaintiff seeks to stand in the shoes of Anderson and to assert an estoppel claim against Zurich. On the basis of the facts that are not in dispute, Anderson is not in a position to assert an estoppel claim against Zurich. Anderson knew that the risk policy was to be cancelled if the premium due was not paid. Anderson made partial payments, and several of its checks presented for payment were not honored for

lack of sufficient funds. Anderson surely must have questioned the state of the risk policy given its tenuous financial situation and the cancellation notice that it had received from Zurich. Because the plaintiff's rights are no better than Anderson's, its estoppel claim fails.

We turn next to the plaintiff's claim that Zurich should be required to indemnify it because it gave Anderson a certificate and failed to notify the Levilles that Anderson, in fact, was not insured. This issue was addressed recently by our Supreme Court in *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 619, in which it was held that an agent's issuing a certificate of liability insurance outlining insurance coverage of the home improvement contractor and the insurer's subsequent cancellation of the policy without notice to the plaintiff homeowner were insufficient to state a cause of action.[7] Id., 631.

In *Nazami*, the plaintiff alleged that she signed a home improvement contract in reliance on the certificate and that the agent knew that the certificate as drafted might lead the plaintiff to believe that the contractor's insurance coverage was guaranteed until the policy expiration date. Id., 623. The policy was cancelled, however, prior to the expiration date. Id., 622. The reliance allegations were incorporated in separate counts alleging violations of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., as well as common-law fraud and negligence. *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 621. The language on the certificate was identical to the language on the certificate at issue here. See id., 622.

In the case before us, the plaintiff alleged only one cause of action pursuant to § 38a-321, not numerous

---

[7] The trial court decided the issue pursuant to the defendants' motion to strike. *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 624.

claims, as in *Nazami*. Within its one count complaint, however, the plaintiff also alleged inducement and unethical business practices. General Statutes § 38a-816 (1) prohibits "misrepresentations and false advertising of insurance policies. . . ." See *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 625–26. Our Supreme Court held that the complaint in *Nazami* failed to state causes of action under either CUIPA or CUTPA. The reliance allegations of the complaint were in conflict with the language of the certificate and therefore did not state a cause of action. Id., 626. The certificate contemplated cancellation and that the insurer would endeavor to inform the certificate holder of cancellation before the date of expiration, but it also explicitly disclaimed any liability in the event the policy was cancelled. Id., 627. The certificate at issue here also contained the same language.

The count sounding in common-law negligence in *Nazami* also failed to state a cause of action because the insurer and the agent owed no duty to the plaintiff homeowner. Our Supreme Court noted that the certificate stated that the insurance afforded was subject to the terms, exclusions and conditions of the policy and disclaimed liability if the policy was cancelled. Id. Further noting that duty is an element of a cause of action in negligence, the court stated "[t]he nature of duty, and the specific persons to whom it is owned, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] has ever been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . Furthermore, [a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was

likely to result from his act or failure to act." (Citation omitted; internal quotation marks omitted.) Id., 630–31.

The *Nazami* plaintiff agreed that the only possible source of a duty of care owed her was the certificate. She claimed that the insurer and agent owed her a duty of care to inform her if the contractor's insurance was cancelled. The Supreme Court disagreed, reasoning that the certificate was issued as a "matter of information only," conferred "no rights upon" the homeowner and did not constitute a contract between the plaintiff, the insurer and the agent. (Internal quotation marks omitted.) Id., 631. Even if our Supreme Court had assumed that "some contractual relationship was created by the issuance of the certificate that would have given rise to a duty, the certificate clearly disclaims any duty to inform the plaintiff. Although the certificate did provide that the 'issuing insurer' would 'endeavor to mail [ten] days written notice' to the plaintiff if the policy was cancelled before the expiration of the stated term, it also clearly disclaimed liability in the event that notice was not mailed." Id. Because the language of the certificate at issue in this case is the quoted language from *Nazami* and the circumstances of the damage to the respective properties are similar, our Supreme Court's reasoning is controlling of this appeal.

Troublesome as it may be that Zurich permits its agents to issue certificates when it knows prior to the certificate's being issued that coverage was cancelled and lacks an identifiable procedure for notifying certificate holders that coverage has been cancelled, the allegations in the plaintiff's complaint do not state a cause of action against Zurich. Furthermore, we cannot conclude that the result is inequitable. The Levilles have been compensated by the plaintiff for the damage to their home pursuant to their homeowner's insurance, for which they paid the plaintiff a premium.

The judgment is affirmed.

In this opinion the other judges concurred.