******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JASON DICKAU *v.* LAWRENCE MINGRONE
(AC 42256)

Keller, Elgo and Devlin, Js.

*Syllabus*

The plaintiff, who had purchased certain residential real property in New Haven from the defendant, brought an action seeking damages for, inter alia, breach of contract for the defendant's failure under the contract to deliver a property that contained three legal dwelling units. The defendant purchased the property in 1979, and had used it as a three unit residence during his ownership. In 2011, the city building department sent a letter to the defendant, informing him that the department's records indicated that the property was a two unit residence, and that it may have been altered without approval from the building department. Thereafter, the defendant spoke with the building department's director, and the defendant believed that the matter was resolved. Subsequently, the defendant represented in a real estate listing that the property was a three unit residence and sold the property to the plaintiff in 2015, without informing the plaintiff of the 2011 letter. Thereafter, the plaintiff became aware of the 2011 letter upon inspecting the records of the building department on an unrelated matter. The trial court rendered judgment for the defendant, from which the plaintiff appealed, claiming, inter alia, that the trial court erred in finding that the city building department had not made a determination that the plaintiff's property contained only two residential units. *Held*:

1. The trial court did not err in finding that the city building department had not made a determination regarding the use and occupancy status of the property; contrary to the plaintiff's claim that the building department had determined that the property contained a two unit residence, there was sufficient evidence in the record to support the trial court's finding, as the building department official testified that no determination regarding the number of legal units had been made, no code violations regarding the number of legal units had been communicated to the defendant, and no further action had been taken after the issuance of the 2011 letter; moreover, although the plaintiff was correct in asserting that the record contained some contradictory evidence regarding the building department's determination, the mere existence of such evidence was insufficient to undermine the finding of the trial court.

2. The plaintiff could not prevail on his claim that the trial court erred in not finding that the plaintiff established the existence of damages, as the defendant cannot be liable for damages if, pursuant to the court's findings, he was not liable for the underlying causes of action.

Argued November 19, 2019—officially released February 25, 2020

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Markle, J.*; judgment for the defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Russell Bonin*, with whom was *Stuart A. Margolis*, for the appellant (plaintiff).

*Albert J. Oneto IV*, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Jason Dickau, appeals from the trial court's judgment in favor of the defendant, Lawrence Mingrone, on the plaintiff's complaint, which alleged breach of contract, negligent misrepresentation, intentional misrepresentation, and innocent misrepresentation, relating to the defendant's sale of real property to the plaintiff.[1] On appeal, the plaintiff claims that the court's findings that (1) the Office of Building Inspection and Enforcement for the City of New Haven (building department) had not made a determination that the number of legal units in the property was less than three, and (2) the plaintiff had failed to establish the existence of damages as to each of his claims were clearly erroneous.[2] We disagree with the plaintiff and, accordingly, affirm the judgment of the trial court.

The record and the trial court's memorandum of decision reveal the following pertinent facts. From approximately December, 1979, until July 24, 2015, the defendant owned property located at 46 Ruby Street in New Haven (property). The defendant used the dwelling on the property as a three unit residence for the duration of his ownership. The property consisted of a ground level unit,[3] first floor unit, and second floor unit.

The building department enforces the provisions of the State Building Code.[4] On May 24, 2011, the building department sent a letter to the defendant, informing him that the building department's records indicated that the property was a two unit dwelling, but that the dwelling may have been altered through the use of the ground level space as an additional dwelling unit "without the required permits, approvals or a [c]ertificate of [u]se and [o]ccupancy" (2011 letter).[5] The 2011 letter directed the defendant to contact the building department to schedule an inspection of the property. Subsequently, the defendant contacted the building department via telephone and spoke to the director at the time, Andrew Rizzo. At the conclusion of the conversation, the defendant "was confident that [the] matter had been resolved and [that] the letter was sent in error and [that he] was to disregard it." Following the phone conversation, the building department did not follow up with the defendant, inspect the property, issue fines, or take any further action regarding the 2011 letter.

In 2012, a tree fell on the property during a storm and a representative from the building department, John Raffone, inspected the property, including the ground level unit. Following the inspection, the building department did not issue notification of any code violations with respect to the use and occupancy of the property, nor did the building department require the defendant to make any changes to the ground level unit. Additionally, the defendant visited the building department and

met with Raffone and Rizzo regarding the immediate displacement of his tenants following the damage caused by the tree. During this meeting, the building department representatives did not raise any concerns regarding code violations with respect to the use and occupancy of the property.

Further, in 2013, the defendant filed a residential rental license renewal application with Livable City Initiative (LCI).[6] In this application, the defendant listed the property as consisting of three residential units. On December 9, 2013, a representative from LCI performed an inspection of the property and did not report any code violations. Following the property's successful inspection, LCI issued a residential rental license to the defendant for three units, which was valid from December 10, 2013 until June 28, 2016.

In 2015, the defendant posted an advertisement for the sale of the property on an online marketplace, where he listed the property as consisting of three, one bedroom units. The advertisement also listed the property's annual rental income as $35,000. On May 19, 2015, the defendant entered into a written contract to sell the property to the plaintiff and, on July 24, 2015, the parties closed on the property. At the closing, the defendant provided the plaintiff with a comprehensive seller's affidavit in which the defendant affirmed that he had "no knowledge of any violation of any covenants, restrictions, agreements, conditions or zoning ordinances affecting said premises." The defendant also provided the plaintiff with an income and expense statement, which listed gross income for the rental of the property's three residential units. The defendant did not notify the plaintiff of the 2011 letter prior to or at the time of the closing.

In late 2015, the plaintiff, then the owner of the property, went to the building department because a tree branch damaged a power line on the property. It was at this time that the plaintiff first became aware of the 2011 letter in the building department's file for the property. Upon finding the 2011 letter, the plaintiff believed that the property contained only two legal units and that significant monetary expenses would be required to convert the property to three units. Thereafter, the plaintiff initiated the present action against the defendant. On April 18 and 19, 2018, a two day trial in the matter was heard by the court, *Markle, J.* The court rendered judgment for the defendant as to the remaining four counts of the complaint. See footnote 1 of this opinion. The court rested its judgment on its finding that the building department never made a determination that the property contained less than three units and, therefore, the defendant neither breached the contract with the plaintiff by providing a property with less than three units, nor falsely represented to the plaintiff that the property legally contained

three units. This appeal followed.

## I

The plaintiff first claims that the court's finding that "the building department [had] not made any determination" with respect to the designation of the property's occupancy status was clearly erroneous. Specifically, the plaintiff claims that the building department had determined that the property legally contained two units. We disagree with the plaintiff and conclude that the court was not clearly erroneous in finding that the building department had not made a determination regarding the use and occupancy status of the property.

We begin by setting forth the applicable standard of review. "[I]t is axiomatic that [t]he trial court's [factual] findings are binding upon [an appellate] court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 132, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014). Further, "the mere existence in the record of evidence that would support a different conclusion, without more, is not sufficient to undermine the finding of the trial court. . . . [T]he proper inquiry is whether there is enough evidence in the record to support the finding that the trial court made." (Emphasis omitted.) *In re Jayce O.*, 323 Conn. 690, 716, 150 A.3d 640 (2016).

The plaintiff's breach of contract claim was dependent on a finding that the defendant failed to perform under the contract by delivering a property with less than three legal units. The plaintiff's three misrepresentation claims[7] were dependent on a finding that the defendant falsely represented to the plaintiff that the property contained three legal units. Therefore, as the parties acknowledge, if the court properly found that the building department did not make a determination that the property contained less than three legal units, that finding would be fatal to all four of the plaintiff's claims.

Upon careful review of the record, we conclude that the court's finding that the building department had not made a determination that the property was less than a legal three unit residence is supported by facts in the record. In making its finding, the court credited the testimony of the director of the building department, James Turcio. In particular, Turcio testified that he had "never given an opinion on [the] property . . . ."[8] The court also relied on the fact that, following the issuance

of the 2011 letter, the building department did not follow up on the potential code violation or issue any notices of code violations to the defendant. The following exchange at trial during the cross-examination of Turcio by the defendant's counsel is especially illustrative:

"Q. So isn't it fair to say that the letter is not really a finding that the property—that the . . . first level apartment is not in violation of the building code but it's merely an inquiry of the defendant asking him to contact the city?

"A. Basically it's asking . . . to contact an inspector so he could do an inspection to confirm whether it is an illegal unit or not.

"Q. Correct. And . . . because . . . Rizzo did not order him to cease using the basement apartment as a dwelling, it means that this letter did not make a finding that the [ground level] apartment was in violation of the building code?

"A. Was even there, yes."

The following additional exchange at trial between the defendant's counsel and Turcio highlights that the building department's actions were inconsistent with the building department's having made a determination that the property contained less than three units:

"Q. In . . . 2011, when . . . Rizzo was the building director, if he believed there was an ongoing violation after the [2011 letter] was sent, he was required under the building code to send a cease and desist letter for use of the [ground level] apartment. Correct?

"A. Yes.

"Q. And is there anything in the building department file to indicate that . . . Rizzo ever issued an order to [the defendant] to cease using the [ground level] apartment as a dwelling?

"A. No.

"Q. And, in fact, there is a letter from 2012, which indicates that the property was reinspected by . . . Raffone in the year 2012. Correct?

"A. Yes.

"Q. And that letter from 2012 made no mention of any issue under the building code with regard to the [ground level] apartment being in violation of the certificate of use and occupancy requirement. Correct?

"A. Yes."

The court further reasoned that the building department's actions following the aforementioned 2012 inspection supported the finding that the building department had not determined that the property contained less than three legal residential units. Specifically, there was evidence that, subsequent to the inspec-

tion, Raffone referred the defendant to several of the property's building code violations with respect to damage caused by the fallen tree. None of these code violations, however, referenced improper use and occupancy of the property, despite the fact that the property's use, as a three unit residence, would have been evident at the time of the inspection.

In making its finding, the court also reasoned that, although the building department is the sole entity responsible for making a determination regarding housing code violations and following up on such code violations, the building department's communication, or lack thereof, with LCI regarding the contents of the 2011 letter, supported the finding that the department had not a made a determination as to the property's occupancy status. In 2013, LCI issued a three year residential permit for the property to the defendant, for three rental units. The director of LCI, Rafael Ramos, testified that the 2011 letter was not in LCI's file for the property in question. Ramos further testified that the building department traditionally follows protocol to communicate code violations with LCI and that if LCI had knowledge of the issues outlined in the 2011 letter, then it would have been required not to issue the license to the defendant until having received a certificate of occupancy from the building department.

The plaintiff is correct in his assertion that the record contains some contradictory evidence regarding the building department's determination as to the property's use and occupancy status.[9] As stated previously, however, the mere existence of such evidence is not enough to undermine the finding of the trial court when the record contains sufficient evidence to support the court's finding. See, e.g., *In re Jayce O.*, supra, 323 Conn. 690. Here, the trial court's finding is adequately supported by evidence in the record and it is not within this court's province to question that finding.

On the basis of the foregoing, we conclude that, because the court's finding that the building department had not made a determination that the property contained less than three legal units was based on sufficient evidence in the record, the court properly ruled in favor of the defendant as to the plaintiff's breach of contract count, as well as the plaintiff's three misrepresentation counts.

## II

Next, the plaintiff claims that the court's finding that the plaintiff failed to establish the existence of damages as to each of his counts was clearly erroneous. On the basis of our resolution of the claim discussed in part I of this opinion,[10] we reject the plaintiff's claim that the trial court was clearly erroneous in finding that the plaintiff failed to establish the existence of damages because the defendant cannot be liable for damages if,

pursuant to the court's findings, he is not liable for the underlying causes of action.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On November 19, 2016, prior to trial, the court, *Wilson, J.*, granted the defendant's motion to strike count five of the plaintiff's complaint, in which the plaintiff alleged that the defendant violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. That ruling is not a subject of this appeal.

[2] In his brief, the plaintiff asserts that the trial court was clearly erroneous "(1) . . . in its finding that the [building department] had not made a determination that the number of legal units in the property was less than three," "(2) . . . in its finding that each of the plaintiff's claims relied on a possible future event, rather than an existing fact," "(3) . . . in its findings that the plaintiff failed to establish the existence of damages as to each of his claims," and "(4) . . . in its finding that the plaintiff only offered speculative evidence as to the existence and extent of his damages on each of his claims." We have combined the plaintiff's second, third, and fourth claims, as they appear in his brief, into one damages claim, and, as explained later in this opinion, we reject the damages claim in light of our resolution of the first claim.

[3] Although the building department refers to the lowest level unit of the property as the "basement" unit, throughout this opinion we refer to the lowest level unit as the "ground level" unit because the unit is level with the ground.

[4] General Statutes § 29-253 (a) provides: "The State Building Code, including any amendment to said code adopted by the State Building Inspector and Codes and Standards committee, shall be the building code for all towns, cities and boroughs."

[5] The 2011 letter specifically cited a potential violation under § 110.1 of the 2005 State Building Code, which states: "Pursuant to [General Statutes § 29-265 (a)], no building or structure erected or altered in any municipality after October 1, 1970, shall be occupied or used, in whole or in part, until a certificate of occupancy has been issued by the building official, certifying that such building or structure or work performed pursuant to the building permit substantially complies with the provisions of the State Building Code."

[6] Pursuant to chapter 17 of title III of the New Haven Code of Ordinances, LCI issues residential rental licenses to landlords who own two or more units within a dwelling. If a property is in violation of a building code, then LCI cannot issue a residential rental license until the violation has been rectified.

[7] The plaintiff's misrepresentation claims are negligent misrepresentation, intentional misrepresentation, and innocent misrepresentation.

"[A]n action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact, (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 626, 910 A.2d 209 (2006).

"The essential elements of an action in [common-law] fraud, as we have repeatedly held, are that: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010).

"The elements of innocent misrepresentation are (1) a representation of material fact (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages." *Frimberger* v. *Anzellotti*, 25 Conn. App. 401, 410, 594 A.2d 1029 (1991).

[8] Turcio's testimony that he never gave an opinion on the property occurred at trial during the cross-examination of Turcio conducted by the defendant's counsel:

"Q. Why did the building department look at a 1963 Price and Lee [telephone] directory in assessing whether this property was a two-family versus a three-family property?

"A. I can't speak to a past building official's judgment.

"Q. Did you yourself rely on the 1963 Price and Lee [telephone] directory when you gave your opinion that the property was a two-family property?

"A. I have never given an opinion on this property and the day I took over, I took the Price and Lee and threw it out.

"Q. And why did you throw it out?

"A. [Because] there's nothing in the building code that tells me I could determine occupancy of a house based on how many phones they have in it.

"Q. So . . . if [Rizzo] relied on the Price and Lee [telephone] directory when he indicated that records from this department show that the [property] is a two-family dwelling, that's not based on information that the building code permits him to consider?

"A. Correct."

[9] The plaintiff points to a particular exchange at trial between the court and Turcio during cross-examination conducted by counsel for the defendant to support his assertion that the building department had, in fact, made a determination that the property contained less than three units:

"Q. So just to clarify, so you as an official from the city have determined that it is now, for lack of a better term, a legal two-family? I mean you've accepted that?

"A. For lack of a better term, yes.

"Q. And the city accepts that, that it's a two?

"A. Yes.

"Q. But you don't accept that it's a three?

"A. I do not accept that it's a three."

[10] At oral argument, counsel for both the plaintiff and the defendant agreed that, if the plaintiff's first claim fails, then the plaintiff cannot prevail on the second claim.

———————————————