Jerry Oden, as administrator of the estate of his son Mark Jeremy Oden, appeals from summary judgments in favor of the defendants, Pepsi-Cola Bottling Company of Decatur, Inc. ("Pepsi"), and The Vendo Company ("Vendo"), in a products liability action alleging negligent, wanton, and defective design, labeling, and installation of a soft drink vending machine.[1] We affirm.
On October 18, 1988, Mark died from injuries he sustained when a soft drink vending machine fell on him. The machine was located outside Jack Hopper's general merchandise store in Eva, Alabama. It is undisputed that Mark and a friend were tilting the machine forward to steal drinks from it. To accomplish the theft, Mark's friend stood between the machine and the wall of the store and tilted the machine forward and Mark stood in front of the machine to steady it. Tilting the machine in this manner dislodges drink cans, and the cans drop out of the machine. Mark and his friend had used this tilting procedure successfully that same evening to steal drinks from several other vending machines located in front of the same store. However, Mark was unable to steady this particular machine. It fell on him and crushed him.
The vending machine that is the subject of this litigation was manufactured by Vendo and was sold to Pepsi in 1984. On April 26, 1989, Oden filed this action against Vendo and Pepsi, alleging that the vending machine was defective because it did not carry a warning that the machine would fall over when tilted, did not have an anti-theft device to prevent drink cans from falling out when the machine was tilted forward, and did not have brackets to anchor the vending machine to the ground or to a permanent fixture so as to prevent tilting. Oden also alleged that Vendo and Pepsi had negligently and wantonly failed to provide the above-mentioned safety devices, with knowledge that it was possible to steal drinks from these machines by tilting them forward, and with knowledge that some individuals who were stealing drinks in this manner had been seriously injured or killed.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988) (citing Chiniche v. Smith,374 So.2d 872 (Ala. 1979)); Rule 56(c) Ala.R.Civ.P. When the movant has carried the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the party opposing the summary judgment motion has the burden of presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, §12-21-12.
Because the parties do not dispute the fact that Mark was stealing drinks from the vending machine when it fell on him, we conclude that the judgment in favor of Vendo and Pepsi was proper. In Hinkle v. Railway Express Agency, 242 Ala. 374,6 So.2d 417 (1942), this Court stated: "A person cannot maintain a cause *Page 955 
of action if, in order to establish it, he must rely in whole or part on an illegal or immoral act or transaction to which he is a party." 242 Ala. at 379, 6 So.2d at 421. We interpret the rule in Hinkle to bar any action seeking damages based on injuries that were a direct result of the injured party's knowing and intentional participation in a crime involving moral turpitude.
Many other jurisdictions apply a similar rule. See Amato v.United States, 549 F. Supp. 863, 867 (D.N.J. 1982), aff'dwithout opinion, 729 F.2d 1445 (3d Cir. 1984) (bank robber, severely injured by gunfire during a bank robbery, could not recover from FBI on theory that it had acted negligently when, with prior notice of his plan to rob the bank, it failed to apprehend him for the lesser crime of conspiracy); Lord v.Fogcutter Bar, 813 P.2d 660, 662 (Alaska 1991) (intoxicated man who left a bar with a woman and was later convicted of raping her could not recover from bar and bartender on theory that the bartender was criminally negligent in continuing to serve him after he had become intoxicated); Adkinson v. Rossi Arms Co.,659 P.2d 1236, 1239 (Alaska 1983) (man convicted of intentionally shooting a third person could not recover from manufacturer and seller of shotgun on theory that the shotgun was defectively designed); Cole v. Taylor, 301 N.W.2d 766, 768
(Iowa 1981) (wife convicted of murdering her husband could not recover from her psychiatrist on theory that the psychiatrist had negligently failed to prevent her from shooting her husband); Barker v. Kallash, 63 N.Y.2d 19, 24-26, 479 N.Y.S.2d 201,203, 206, 468 N.E.2d 39, 41-42 (1984) (parents of boy injured while constructing a pipe bomb, in violation of statute, using gun powder extracted from firecrackers, could not recover from the boy who had sold him the firecrackers in violation of state law); Glazier v. Lee, 171 Mich. App. 216,429 N.W.2d 857, 860 (1988) (man who murdered his girlfriend could not recover from his psychiatrist on theory that the psychiatrist had negligently failed to prevent him from shooting his girlfriend).
This rule promotes the desirable public policy objective of preventing those who knowingly and intentionally engage in an illegal or immoral act involving moral turpitude from imposing liability on others for the consequences of their own behavior. Even so, such a rule derives principally not from consideration for the defendant, "but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of government." Bonnier v. Chicago, B. Q. R.R., 351 Ill. App. 34, 51, 113 N.E.2d 615, 622 (1953),rev'd on other grounds, 2 Ill.2d 606, 119 N.E.2d 254, cert.denied, 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 655 (1954) (citations omitted).
Our interpretation of Hinkle does not foreclose a trespasser's action against a landowner who willfully or wantonly injures him,[2] unless the injuries incurred are a direct result of an injured party's knowing and intentional participation in a crime of moral turpitude. That is, our application of the rule in Hinkle would bar an action by a trespasser injured while attempting to enter an occupied
dwelling for the purpose of inflicting bodily injury on the occupant of the dwelling.
For the foregoing reasons, the judgments in favor of Vendo and Pepsi are due to be affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
KENNEDY and INGRAM, JJ., concur in the result in part and dissent in part, with separate opinions.
[1] Section 6-5-391, Ala. Code 1975, contemplates that in an action alleging the wrongful death of a minor the parent will sue as the parent. However, Mr. Oden's right to sue is not affected by the fact that he sued instead as administrator of his minor son's estate. See, e.g., Benson v. Robinson, 223 Ala. 85,134 So. 799 (1931); McWhorter Transfer Co. v. Peek, 232 Ala. 143,167 So. 291 (1936); and Daniel Constr. Co. v. Pierce, 270 Ala. 522, 120 So.2d 381 (1959).
[2] In Ryals v. United States Steel Corp., 562 So.2d 192 (Ala. 1990), we held that the duty owed by a landowner to an adult trespasser who enters the premises to engage in theft is different from the ordinary duty owed by a landowner to a trespasser. The landowner's duty to one who trespasses with intent to steal is a duty to refrain from intentionally injuring him. Id. at 194.