RYAN TRANSPORTATION, INC. *v.* M AND G
ASSOCIATES ET AL.
(SC 16923)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued March 19—officially released November 4, 2003

*W. Anthony Stevens, Jr.*, with whom was *Louis W. Flynn, Jr.*, for the appellant (plaintiff).

*Joel M. Fain*, with whom, on the brief, was *Mary J. Ambrogio*, for the appellees (named defendant et al.).

*Jack G. Steigelfest*, with whom, on the brief, were *Constance L. Epstein* and *James F. Sullivan*, for the appellee (defendant Auto Lock Unlimited, Inc.).

*Opinion*

PALMER, J. The plaintiff, Ryan Transportation, Inc., commenced this action against its commercial cotenant, the defendant, Auto Lock Unlimited, Inc. (Auto Lock), and its landlord, the named defendant, M and G Associates (M & G),[1] seeking damages for losses

---

[1] The plaintiff also named Park Industrial Development, Inc.(Park Industrial), David Mashkin, Frances Mashkin, Benjamin Goldfarb and Stuart Kaufman as defendants. In its complaint, the plaintiff described this group, along with M & G, as "owners, managers or in control" of the building that the plaintiff had used for the storage of its business property. Furthermore, of all of the defendants in this group of defendants, the trial court referred

sustained as a result of a fire, set by an unknown arsonist, that destroyed a building that Auto Lock and the plaintiff occupied. The plaintiff alleged in its complaint that both Auto Lock and M & G knew of an earlier, unsuccessful attempt to set the building on fire and negligently failed to notify the plaintiff about it. The trial court, *Beach, J.*, granted Auto Lock's motion for summary judgment, concluding that, as a matter of law, Auto Lock did not have a duty to protect the plaintiff from the actions of third parties. Thereafter, the claim against M & G was tried to a jury before the court, *Rittenband, J.* The jury returned a verdict in favor of M & G, and the court rendered judgment for Auto Lock and M & G, from which the plaintiff appealed.

On appeal,[2] the plaintiff claims that the trial court improperly: (1) granted Auto Lock's motion for summary judgment because Auto Lock had a duty to notify the plaintiff of the prior arson attempt; and (2) permitted M & G to introduce certain documentary evidence to impeach the plaintiff's key witness. We conclude that the trial court properly granted Auto Lock's motion for summary judgment because we agree that Auto Lock had no duty to notify the plaintiff of the prior arson attempt. We also conclude that the record is inadequate for our review of the plaintiff's claim of evidentiary impropriety. Consequently, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In April, 1997, both the plaintiff and

only to Park Industrial in the judgment file. On appeal, however, the parties refer only to M & G. We are unable to glean from the record what relationship, if any, exists between Park Industrial and M & G. In the interest of simplicity, we refer to M & G as the only landlord and owner of the building throughout this opinion.

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Auto Lock occupied commercial space in a building owned by M & G. On April 15, 1997, Auto Lock employees noticed soot marks located near an overhead door to the building. Auto Lock notified the police and M & G but did not notify the plaintiff. The following day, an unknown arsonist set fire to the building, destroying the building and the property of the plaintiff that was stored therein.

The plaintiff brought this action against Auto Lock and M & G, among others, seeking damages for losses that it had sustained as a result of that fire. With respect to M & G, the plaintiff alleged that M & G was negligent in failing to: (1) inform the plaintiff of the prior arson attempt; (2) properly safeguard the building; (3) install and maintain outdoor security lighting; (4) provide adequate security; and (5) request an increased police presence upon learning of the prior arson attempt. With respect to Auto Lock, the plaintiff alleged that Auto Lock negligently had: (1) failed to inform the plaintiff of the prior arson attempt; (2) failed to "post" adequate security; (3) failed to secure its own building; and (4) stored motor vehicles in the building.

Auto Lock filed a motion for summary judgment, claiming, inter alia, that it had no duty to protect the plaintiff from the acts of the unknown arsonist. The court granted the motion, concluding that no special relationship existed between Auto Lock and the arsonist or between Auto Lock and the plaintiff that would give rise to any such duty.[3]

M & G denied the allegations of the plaintiff's complaint and asserted two special defenses. In its first special defense, M & G alleged that the plaintiff's own

---

[3] For purposes of Auto Lock's motion for summary judgment, the trial court construed the allegations of the plaintiff's complaint to support an inference that the prior arson attempt was committed by the same person who succeeded in setting the building on fire the following day.

negligence was the proximate cause of any damages that the plaintiff may have sustained as a result of the fire. In its second special defense, M & G alleged that a provision in the lease absolved M & G of liability for any losses due to fire. The plaintiff denied the allegations of both special defenses.[4]

The plaintiff and M & G proceeded to a jury trial. At trial, Steven Dearborn, the plaintiff's president and primary witness, testified that, from 1990 to approximately 1996, the plaintiff had been involved in proceedings under chapter 11 of the federal Bankruptcy Code, 11 U.S.C. § 1101 et seq. Following this testimony, M & G sought to impeach Dearborn with the final decree that formally closed the plaintiff's chapter 11 proceeding on May 26, 1998.[5] The court allowed M & G to introduce the decree into evidence over the plaintiff's objection.[6] Thereafter, the plaintiff elicited further testimony from Dearborn in which he explained the discrepancy between his recollection of the date of the closing of the chapter 11 proceeding and the date of the final decree. At the conclusion of the trial, the jury returned a general verdict in favor of M & G. The plaintiff moved to set aside the verdict on the basis of the allegedly improper admission of the decree. The trial court denied the motion and rendered judgment for Auto Lock and M & G. This appeal followed.

[4] We note that M & G also filed a motion for summary judgment, claiming that judgment should be rendered in its favor based on a provision in the lease that absolved it of liability for any losses stemming from a fire. The trial court, *Beach, J.*, denied that motion, however.

[5] M & G offered the document solely for the purpose of impeaching Dearborn's credibility. The chapter 11 proceeding itself was not relevant to the merits of any claim or defense.

[6] At trial, the plaintiff contended that the decree could not be admitted to impeach Dearborn because it did not contradict his testimony. In support of this contention, the plaintiff maintained that the date of the decree merely reflected the date of the administrative closing of the case and not the date on which the plaintiff actually fulfilled its obligations in connection therewith.

I

The plaintiff first contends that the trial court improperly granted Auto Lock's motion for summary judgment on the ground that Auto Lock had no duty to notify the plaintiff of the prior arson attempt. We disagree.

"Our review of a trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003). "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) Id.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *LePage* v. *Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002). "Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action." (Internal quotation marks omitted.) *Laflamme* v. *Dallessio*, 261 Conn. 247, 251, 802 A.2d 63 (2002). Thus, "[t]here can be no actionable negligence . . . unless there exists a cognizable duty of care." *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). "[T]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct

should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 250, 765 A.2d 505 (2001).

With respect to the second inquiry, namely, the policy analysis, there generally is no duty that obligates one party to aid or to protect another party. See 2 Restatement (Second), Torts § 314, p. 116 (1965). One exception to this general rule arises when a definite relationship between the parties is of such a character that public policy justifies the imposition of a duty to aid or to protect another. See W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 56, pp. 373–74; see also 2 Restatement (Second), supra, §§ 314A, 315, pp. 118, 122. In delineating more precisely the parameters of this limited exception to the general rule, this court has concluded that, "[in the absence of] a *special relationship of custody or control,* there is no duty to protect a third person from the conduct of another." (Emphasis added; internal quotation marks omitted.) *Fraser* v. *United States,* 236 Conn. 625, 632, 674 A.2d 811 (1996). For any such relationship, "the theory of liability is essentially the same . . . . [S]ince the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other . . . ."[7] *Kline* v. *1500 Massachusetts Avenue Apartment Corp.,* 439 F.2d 477, 483 (D.C. Cir. 1970).

---

[7] A relationship involving a defendant's custody of or control over a tortfeasor may give rise to a duty to protect third parties from harm caused by the tortfeasor. See, e.g., *Fraser* v. *United States,* supra, 236 Conn. 632; *Kaminski* v. *Fairfield,* 216 Conn. 29, 33, 578 A.2d 1048 (1990). In the present case, however, the plaintiff does not allege any relationship involving Auto Lock's custody of or control over the unknown arsonist. Thus, our discussion is limited to those circumstances in which the relationship between the parties is such that a duty may be imposed on one party to protect a second party from harm caused by a third party.

The plaintiff asserts that cotenants have a special relationship that gives rise to a duty to protect because cotenants depend on each other for their common safety and security. In support of this assertion, the plaintiff analogizes the relationship between cotenants to the relationship between landlord and tenant. This analogy fails. Although courts have held that, under certain circumstances, landlords may have a duty to take affirmative action to protect tenants and their guests from the criminal conduct of third parties, this duty generally is limited to areas of the leasehold over which the landlord has exclusive control or to situations in which the landlord has the exclusive ability to prevent the unlawful conduct. See, e.g., id., 478–80, 483 (assault and robbery in common area of residential apartment building with allegedly inadequate security and in which prior assaults had occurred); *Martinez* v. *Woodmar IV Condominiums Homeowners Assn., Inc.*, 189 Ariz. 206, 207, 211, 941 P.2d 218 (1997) (assault in parking lot of building with allegedly inadequate security); *Frances T.* v. *Village Green Owners Assn.*, 42 Cal. 3d 490, 495–96, 499, 723 P.2d 573, 229 Cal. Rptr. 456 (1986) (assault and robbery in inadequately illuminated common area of building); *Tenney* v. *Atlantic Associates*, 594 N.W.2d 11, 13, 21 (Iowa 1999) (sexual assault by intruder who gained access to plaintiff's apartment allegedly as result of landlord's failure to safeguard copies of key to plaintiff's apartment); *Samson* v. *Saginaw Professional Building, Inc.*, 393 Mich. 393, 398–99, 407–408, 224 N.W.2d 843 (1975) (assault in building elevator by patient of mental health clinic that occupied unit in building); *Aaron* v. *Havens*, 758 S.W.2d 446, 446–47 (Mo. 1988) (sexual assault by intruder who gained entry to plaintiff's apartment via window adjacent to fire escape). By contrast, tenants have neither exclusive control over common areas nor the exclusive ability to safeguard against the criminal conduct of third parties.

Thus, the rationale for imposing a duty on landlords does not support the imposition of a similar duty on cotenants.

In the present case, the plaintiff does not allege any relationship with Auto Lock beyond that of their commercial cotenancy. There is nothing in the record to suggest that Auto Lock exercised any control over the plaintiff, that Auto Lock gained a superior ability—beyond its knowledge of the prior arson attempt—to protect the plaintiff as a result of the cotenancy, or that the plaintiff's ability to supply its own protection otherwise was limited by a submission to the control of Auto Lock. Moreover, the plaintiff does not allege that Auto Lock took any affirmative action that increased the risk of arson. We conclude, therefore, that Auto Lock had no duty to protect the plaintiff by notifying it of the prior arson attempt.

The plaintiff nevertheless maintains that the granting of summary judgment was inappropriate inasmuch as the trial court had failed to consider whether the harm suffered by the plaintiff was foreseeable to Auto Lock. According to the plaintiff, the resolution of the factual issue of foreseeability is necessary to a determination of whether Auto Lock owed a duty to the plaintiff. We disagree. In asserting that an analysis of foreseeability is a prerequisite to a determination of the existence of a duty, the plaintiff misconstrues the relationship between foreseeability and duty. Although there is no duty to prevent unforeseeable harm, not all injuries that are foreseeable give rise to a legal duty. "Because foreseeability is a necessary component of duty, the absence of foreseeability forecloses the existence of a duty of care. . . . The converse is not [true, however]: the conclusion that a particular injury to a particular plaintiff or class of plaintiffs possibly is foreseeable does not, in itself, create a duty of care." (Citations omitted.) *Waters* v. *Autuori*, supra, 236 Conn. 827. Thus,

"foreseeability is not commensurate with duty, and proof of foreseeability does not establish the existence of a duty of care." Id., 828.

"Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." (Citation omitted; internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 386, 650 A.2d 153 (1994).

In accordance with these principles, the two part test for the existence of a legal duty "invokes the question of foreseeability, and . . . the question of policy." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, supra, 255 Conn. 250. Thus, when a duty is not found to exist under the public policy prong of the test, there is no need to perform an analysis under the foreseeability prong. *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 618 n.11, 783 A.2d 462 (2001) ("[b]ecause we determine that no duty of care existed on the basis of our analysis of the public policy prong—the second prong—of the test for determining the existence of a duty . . . we need not perform an analysis under the foreseeability prong—the first prong—of that test" [citation omitted]). In light of our determination that there did not exist a relationship involving Auto Lock's custody of or control over the plaintiff that would warrant the imposition of a duty to protect the plaintiff from third party conduct, we need not address the issue of foreseeability.

## II

The plaintiff next claims that the judgment rendered in accordance with the jury verdict must be reversed because the trial court improperly had permitted M &

G to introduce a final bankruptcy decree into evidence for the purpose of impeaching Dearborn, the plaintiff's president and primary witness. The plaintiff asserts that the decree was irrelevant to Dearborn's credibility and that its allegedly improper admission was harmful because Dearborn's testimony was critical to establishing the plaintiff's case and to rebutting the special defenses asserted by M & G. We conclude that the record is inadequate for review of the plaintiff's claim.

"[T]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Kirsch*, 263 Conn. 390, 399, 820 A.2d 236 (2003). Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. See, e.g., *George* v. *Ericson*, 250 Conn. 312, 327, 736 A.2d 889 (1999). In other words, an evidentiary ruling will result in a new trial only if the ruling was "both wrong and harmful." (Internal quotation marks omitted.) *Sanderson* v. *Steve Snyder Enterprises, Inc.*, 196 Conn. 134, 142, 491 A.2d 389 (1985). Finally, the standard in a civil case for determining whether an improper ruling was harmful "is whether the . . . ruling [likely] would [have] affect[ed] the result." (Internal quotation marks omitted.) *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990).

Although the plaintiff asserts that Dearborn's credibility was central to the case, the plaintiff has not provided us with a transcript of his trial testimony[8] or, for that matter, the testimony of any other witness.

---

[8] The plaintiff has provided us with a transcript of Dearborn's testimony regarding the bankruptcy decree only. We do not have the remainder of Dearborn's trial testimony, however. Thus, the record on appeal is devoid of any testimony by Dearborn concerning the merits of the plaintiff's case.

Therefore, even if we assume, arguendo, that the challenged evidentiary ruling was improper, we have no way of discerning whether any such impropriety was harmful in the broader context of the entire trial. See id., (determination of whether improper evidentiary ruling constituted harmful error "lies in the record" [internal quotation marks omitted]). "It is well established that the appellant bears the burden of providing an appellate court with an adequate record for review." (Internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 183, 819 A.2d 765 (2003). Inasmuch as the plaintiff has failed to provide a record on appeal that is sufficient to permit us to determine whether the allegedly improper evidentiary ruling was harmful, we decline to review the plaintiff's claim. See, e.g., *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 202–203, 819 A.2d 227 (2003).

The judgment is affirmed.

In this opinion the other justices concurred.