******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LEE GREENWALD *v.* DAVID VAN HANDEL
(SC 19100)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Espinosa, Js.

*Argued October 21, 2013—officially released April 15, 2014*

*James P. Brennan*, for the appellant (plaintiff).

*John F. Costa*, with whom was *Liam M. West*, for the appellee (defendant).

*Kathryn Calibey* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Calum B. Anderson* and *Frank H. Santoro* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

McDONALD, J. The sole issue in this appeal is whether it would violate the public policy of this state to allow the plaintiff, Lee Greenwald, to maintain a professional negligence action against the defendant, David Van Handel, a licensed clinical social worker, on the basis of allegations that the defendant negligently failed to treat the plaintiff after he disclosed to the defendant that he had viewed child pornography. The plaintiff alleges that the defendant's failure to treat him caused him to be subjected to a police task force raid and led to emotional distress and other injuries due to potential criminal prosecution. The trial court granted the defendant's motion to strike the plaintiff's amended complaint on the ground that it would violate public policy to allow the plaintiff to profit from his own criminal acts. The plaintiff claims on appeal that this state has not adopted a wrongful conduct rule that per se bars tort recovery, and even if such a rule generally applies, we should follow case law from another jurisdiction recognizing exceptions to that rule that are applicable in the present case. We conclude that it is unnecessary to adopt any broad rule or exceptions thereto because it clearly would violate public policy to impose a duty on the defendant in the present case to protect the plaintiff from injuries arising from his potential criminal prosecution for the illegal downloading, viewing and/or possession of child pornography. Accordingly, we affirm the judgment of the trial court.

The plaintiff's amended complaint alleged the following facts, which are deemed admitted for purposes of ruling on a motion to strike. See *Murillo* v. *Seymour Ambulance Assn., Inc.*, 264 Conn. 474, 476, 823 A.2d 1202 (2003). The plaintiff was a therapy patient of the defendant from February, 1999, when the plaintiff was seven years old, until October, 2008, when he was seventeen years old. On more than one occasion, the plaintiff told the defendant during counseling sessions that he was viewing child pornography on the Internet. The defendant dismissed or ignored the plaintiff's statements, and the plaintiff continued to view child pornography. As a result of the defendant's failure to treat the plaintiff in connection with this conduct, to refer the plaintiff to another mental health professional for treatment, or to notify the plaintiff's parents of his dangerous and criminal behavior, the plaintiff continued to view child pornography on the Internet after he reached the age of majority. In September, 2010, approximately two years after the plaintiff ceased therapy treatment with the defendant, the plaintiff's home was raided by members of a Connecticut State Police Task Force. The police seized the plaintiff's computers, backup hard drives, and other electronic devices. At the time his complaint was filed, the plaintiff was waiting to learn if the police were going to issue a warrant for his arrest.

If found guilty of violating the criminal statutes prohibiting the downloading, viewing and/or possession of child pornography, the plaintiff faced a term of imprisonment and could suffer the humiliation, publicity, embarrassment, and economic repercussions associated with the conviction and attendant registration as a sex offender.[1]

The record reveals the following additional facts. In January, 2011, the plaintiff brought this action, and in June, 2011, amended his complaint, alleging that the defendant's failure to address his forays into child pornography when he was a minor led to his continued viewing of child pornography and his home being raided and searched by the police. The plaintiff further alleged that, as a consequence of the defendant's negligence, he has spent, and will be required to continue to spend, large sums of money on professional mental health care for his recovery and maintenance. The defendant moved to strike the plaintiff's amended complaint, contending, inter alia, that, as a matter of public policy, Connecticut precludes recovery for the consequences of one's own criminal actions. Over the plaintiff's objection, the trial court granted the defendant's motion and thereafter rendered judgment in his favor. This appeal followed.

On appeal, the plaintiff argues that the trial court improperly struck his complaint because, although Connecticut case law has applied a rule barring plaintiffs from profiting from their own wrongdoing, those cases are distinguishable. None of those cases involved a plaintiff alleging professional negligence against a health care provider that occurred when the plaintiff was a minor. Moreover, they involved actions against innocent defendants or coconspirators. In the absence of applicable case law, the plaintiff urges this court to look to case law of our sister states, specifically Michigan, which recognizes exceptions to the wrongful conduct rule that he contends are applicable in the present case. The plaintiff contends that this court's reasoning in *Edwards* v. *Tardif*, 240 Conn. 610, 618, 692 A.2d 1266 (1997), holding that a physician could be liable for a patient's suicide when the risk of suicide was foreseeable and the physician's negligence proximately caused the patient's suicide, supports his claim that he has the ability to proceed in the present case. We conclude that, in light of the particular allegations in this case, we need not adopt any sweeping rule or exceptions thereto. Instead, we simply conclude that it would violate public policy to impose a duty on the defendant to protect the plaintiff from the injuries arising from the legal consequences of his admitted illegal conduct.

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of

the court's ruling is plenary. . . . We take the facts to be those alleged in the [pleading] that has been stricken and we construe the [pleading] in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) *Jarmie* v. *Troncale*, 306 Conn. 578, 583, 50 A.3d 802 (2012).

Although both parties frame their public policy arguments in the abstract, this court examines policy questions in negligence cases within the analytic framework of the duty element.[2] See, e.g., id., 598–99; *Fraser* v. *United States*, 236 Conn. 625, 634, 674 A.2d 811 (1996). "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry [is] whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself . . . but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) *Jarmie* v. *Troncale*, supra, 306 Conn. 590.

The trial court in this case did not address the issue of foreseeability, although it was raised as part of an alternative ground in the defendant's motion to strike. This court frequently has noted, however, that "we are not required to address the [issue of] foreseeability if we determine, based on . . . public policy . . . that no duty of care existed." *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 218, 905 A.2d 1135 (2006); see also *Ryan Transportation, Inc.* v. *M & G Associates*, 266 Conn. 520, 529, 832 A.2d 1180 (2003); *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 618 n.11, 783 A.2d 462 (2001). Thus, the plaintiff cannot prevail here unless we conclude that it is the public policy of this state to impose a duty on the defendant to protect the plaintiff from injuries resulting from the police raid of his home and impending prosecution as a consequence of his downloading and viewing of child pornography.

This court has recognized the common-law maxims that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire

property by his own crime. These maxims are dictated by public policy, [and] have their foundation in universal law administered in all civilized countries . . . ." (Internal quotation marks omitted.) *Thompson* v. *Orcutt*, 257 Conn. 301, 316, 777 A.2d 670 (2001); see also *Gagne* v. *Vaccaro*, 255 Conn. 390, 407, 766 A.2d 416 (2001) ("[w]e recognize the broad general doctrine founded on the maxim ex turpi causa non oritur actio—no cause of action can arise out of an illegal or immoral inducement"). Although we have applied these principles in the contract and equity context; see, e.g., *Thompson* v. *Orcutt*, supra, 316–18 (holding fraud committed in bankruptcy court by foreclosing creditor barred recovery under unclean hands doctrine on public policy ground); *Solomon* v. *Gilmore*, 248 Conn. 769, 790–93, 731 A.2d 280 (1999), and cases cited therein (precluding enforcement of contracts when plaintiffs had violated statutory requirements governing such contracts); we have never considered whether such principles apply to negligence actions generally and, if so, whether limitations to those principles should be recognized. But see, e.g., *Thompson* v. *Orcutt*, supra, 310 (narrowing application of doctrine of unclean hands to circumstances in which plaintiff's cause of action "grows out of or depends upon or is inseparably connected" to his fraud or illegal transaction [internal quotation marks omitted]).

Many of our sister states, however, have extended these principles to tort actions. The generally articulated common-law "wrongful conduct" rule in these jurisdictions provides that a plaintiff cannot maintain a tort action for injuries that are sustained as the direct result of his or her knowing and intentional participation in a criminal act. See, e.g., *Oden* v. *Pepsi Cola Bottling Co. of Decatur, Inc.*, 621 So. 2d 953, 954–55 (Ala. 1993) (precluding father from pursuing products liability claim against soft drink company when son was killed tilting vending machine while attempting to steal drinks); *Orzel* v. *Scott Drug Co.*, 449 Mich. 550, 552–53, 558–59, 577, 537 N.W.2d 208 (1995) (precluding plaintiff from recovering for addiction to methamphetamines on basis of pharmacy's negligent and illegal supply of drugs that plaintiff fraudulently had obtained); *Barker* v. *Kallash*, 63 N.Y.2d 19, 25, 468 N.E.2d 39, 479 N.Y.S.2d 201 (1984) (precluding action on behalf of minor, who suffered blast injuries while constructing illegal pipe bomb, from recovering in action based on negligent supply by other minor of gunpowder).[3] As one court explained: "If courts chose to regularly give their aid under such circumstances, several unacceptable consequences would result. First, by making relief potentially available for wrongdoers, courts in effect would condone and encourage illegal conduct. . . . Second, some wrongdoers would be able to receive a profit or compensation as a result of their illegal acts. Third, and related to the two previously mentioned

results, the public would view the legal system as a mockery of justice. Fourth, and finally, wrongdoers would be able to shift much of the responsibility for their illegal acts to other parties. . . . [W]here the plaintiff has engaged in illegal conduct, it should be the plaintiff's own criminal responsibility which is determinative." (Citation omitted; footnotes omitted; internal quotation marks omitted.) *Orzel* v. *Scott Drug Co.*, supra, 559–60.

The jurisdictions extending this rule to tort actions have set certain limitations on its application. Courts in many of these states have limited the rule's application to cases in which the plaintiff's injuries stem from conduct that is prohibited, as opposed to merely regulated, by law, and the violation is "serious" or involves "moral turpitude."[4] See, e.g., *Oden* v. *Pepsi Cola Bottling Co. of Decatur, Inc.*, supra, 621 So. 2d 955 (noting rule is designed to prevent "those who knowingly and intentionally engage in an illegal or immoral act involving moral turpitude from imposing liability on others for the consequences of their own behavior"); *Orzel* v. *Scott Drug Co.*, supra, 449 Mich. 561 (noting plaintiff's misconduct must "rise to the level of serious misconduct sufficient to bar a cause of action"); *Barker* v. *Kallash*, supra, 63 N.Y.2d 25 (noting plaintiff "cannot seek compensation for the loss, if the criminal act is judged to be so serious an offense as to warrant denial of recovery"). In addition, courts have universally recognized that there must be a sufficient causal nexus between the plaintiff's illegal conduct and his alleged injuries to bar recovery. See, e.g., *Oden* v. *Pepsi Cola Bottling Co. of Decatur, Inc.*, supra, 955 (precluding "any action seeking damages based on injuries that were a direct result of the injured party's . . . participation in a crime"); *Orzel* v. *Scott Drug Co.*, supra, 568 (noting plaintiff's illegal conduct was " 'integral and essential part of [his] case' " and contrasting case in which plaintiff was permitted to pursue premises liability action after falling into hole on premises where she had engaged in illegal bingo game because game "merely served as an occasion for the injury," as opposed to being "proximate contributing cause of [the plaintiff's] asserted injuries"); *Barker* v. *Kallash*, supra, 25 (noting plaintiff's injury must be "direct result" of his criminal act); see also 4 Restatement (Second), Torts § 889 (1979) ("[o]ne is not barred from recovery for an interference with his legally protected interests *merely* because at the time of the interference he was committing a tort or a crime" [emphasis added]).

Although courts have had difficulty drawing these lines in some cases,[5] the present case causes no such problems. The plaintiff has admitted to conduct that constitutes a serious felony, and such conduct has a direct causal connection to his alleged injuries. Accordingly, there is no question that he would be barred from recovering under this rule, despite whatever reasonable

limits might be imposed on its application. Indeed, with a limited exception inapplicable to the present case, the case law addressing circumstances in which a plaintiff alleges that his or her felonious conduct was caused by a mental health care provider's negligence consistently has concluded that the plaintiff's felonious conduct barred his or her recovery.[6] See, e.g., *Burcina* v. *Ketchikan*, 902 P.2d 817, 819, 821 (Alaska 1995) (precluding psychiatric patient convicted of arson for setting fire to mental health center from seeking compensation from psychiatrist and mental health center for injuries resulting from conviction and imprisonment); *Rimert* v. *Mortell*, 680 N.E.2d 867, 869, 876 (Ind. App.) (precluding psychiatric patient found guilty of murder but mentally ill from maintaining petition for payment of excess damages from patient compensation fund filed subsequent to settlement of medical malpractice action against physician, who had released him from hospital, for damages resulting from conviction), transfer denied, 690 N.E.2d 1185 (Ind. 1997); *Cole* v. *Taylor*, 301 N.W.2d 766, 768 (Iowa 1981) (precluding psychiatric patient convicted of murder from maintaining professional negligence claim against psychiatrist for failing to prevent plaintiff from murdering former husband); *Guillie* v. *Comprehensive Addiction Programs, Inc.*, 735 So. 2d 775, 777, 779 (La. App. 1999) (precluding psychiatric patient from maintaining medical malpractice claim against hospital for damages resulting from hospital's misdiagnosis of patient's bipolar disorder which led to his termination after he stole money from his employer); *Glazier* v. *Lee*, 171 Mich. App. 216, 217, 221, 429 N.W.2d 857 (1988) (precluding former patient convicted of manslaughter from maintaining professional negligence action against psychologist for emotional injuries resulting from committing crime).

Nonetheless, the plaintiff argues that we should adopt certain exceptions to the wrongful conduct rule articulated by the Michigan Supreme Court.[7] Specifically, the plaintiff points to *Orzel* v. *Scott Drug Co.*, supra, 449 Mich. 569, in which the court held that, even if a plaintiff has engaged in serious illegal conduct and such conduct proximately caused his injuries, the plaintiff may still seek recovery against the defendant under two circumstances: (1) when both parties have engaged in illegal conduct, the plaintiff may pursue an action "if the defendant's culpability is greater than the plaintiff's culpability for the injuries, such as where the plaintiff has acted under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age"; (internal quotation marks omitted) id.; and (2) when a plaintiff claims that the defendant has violated a statute that explicitly or implicitly allows persons similarly situated to the plaintiff to recover for injuries suffered because of the defendant's violation. Id., 570.

We conclude that we need not consider whether to

adopt these exceptions because even if we were to assume, without deciding, that such exceptions apply, the plaintiff would not satisfy them. With respect to the exception for different degrees of culpability, the essential predicate to this exception is that "both the plaintiff and defendant have engaged in illegal conduct . . . ." Id., 569. Only the plaintiff's conduct was illegal in the present case. Moreover, the allegations do not suggest that the defendant was significantly more at fault for the plaintiff's injuries than the plaintiff himself. See *Stopera* v. *DiMarco*, 218 Mich. App. 565, 571 n.5, 554 N.W.2d 379 (1996) (case involved "defendant who was significantly more culpable than the plaintiff" for losses suffered by plaintiff and therefore exception applied), appeal denied, 455 Mich. 853, 567 N.W.2d 242 (1997). Although the plaintiff emphasizes the fact that he was a minor at the time that he was under the defendant's professional care, he overlooks the significance of his allegation that he already had engaged in the illegal conduct prior to disclosing it to the defendant. Accordingly, the defendant did not coerce or otherwise induce the plaintiff to engage in the illegal conduct. Cf. *Morrison* v. *McCann*, 301 F. Supp. 2d 647, 659–60 (E.D. Mich. 2003) (culpability exception to wrongful conduct rule would have permitted action against psychiatrist who had prescribed significant quantities of drugs to plaintiff and then used position to exert undue influence or otherwise coerce plaintiff into engaging in adulterous sexual relationship, despite fact that adultery was crime under state law). With respect to the statutory violation exception, the plaintiff's complaint does not allege a violation of any statute. Indeed, although procedurally circumscribed by statute, medical malpractice claims are brought pursuant to the common law. See *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 397, 21 A.3d 451 (2011). Contrary to the suggestion in the plaintiff's brief to this court, General Statutes § 52-184c codifies the common-law burden of proof in a medical malpractice action and establishes the parameters for proving the applicable standard of care for health care providers. Moreover, there is no language in § 52-184c suggesting an intent to override the fundamental maxims of the common law and the public policy of our state. See *Neuhaus* v. *DeCholnoky*, supra, 280 Conn. 221 (noting "our courts routinely examine whether to extend a duty to a particular defendant, at least in part, in light of the policy considerations at play in the case," without redefining scope of defendant's duty in § 52-184c); *Bird* v. *Plunkett*, 139 Conn. 491, 496, 95 A.2d 71 (1953) ("all laws . . . may be controlled in their operation and effect by general, fundamental maxims of the common law" [internal quotation marks omitted]).[8] Accordingly, even if we were to adopt the exceptions, both of them would be clearly inapplicable in the present case.

Finally, we agree with other jurisdictions that have

concluded that the mere availability of common-law or statutory comparative negligence, which permits a plaintiff to recover even if his own negligence contributed to his injuries; see General Statutes § 52-572h (b); does not negate application of the wrongful conduct rule. As one court explained, comparative negligence "has no application to the [wrongful conduct] rule precluding a plaintiff from recovering for injuries sustained as a direct result of his own illegal conduct of a serious nature . . . . That rule is not based on the theory that a plaintiff, with an otherwise cognizable cause of action, cannot recover for an injury to which he has contributed . . . . It rests, instead, upon the public policy consideration that the courts should not lend assistance to one who seeks compensation under the law for injuries resulting from his own acts when they involve a substantial violation of the law . . . . It simply means that proof of such an injury would not demonstrate any cause of action cognizable at law."[9] (Citations omitted.) *Barker* v. *Kallash*, supra, 63 N.Y.2d 28–29.

Based on our analysis of these fundamental principles of tort law, we hold that irrespective of whatever limits might be imposed by the wrongful conduct rule, it is clear to this court that it would violate the public policy of our state to impose a duty on the defendant to protect the plaintiff from injuries arising from the legal consequences of the plaintiff's volitional criminal conduct, unlawful viewing and downloading of child pornography. Under the theory of recovery advanced by the plaintiff, the more serious the criminal conduct, and the more severe the attendant punishment, the greater his recovery would be. It is self-evident why such a result would contravene public policy. Moreover, "[t]he fundamental policy purposes of the tort compensation system [namely] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct"; (internal quotation marks omitted) *Jarmie* v. *Troncale*, supra, 306 Conn. 599; would not be met by imposing such liability on the defendant.

In reaching this conclusion, we underscore that we do not hold that the defendant did not have a duty to exercise reasonable care in his treatment of the plaintiff. Indeed, if the plaintiff sustained injuries independent of the legal consequences of his criminal acts as a result of the defendant's negligent treatment of his underlying mental condition, the wrongful conduct rule would have no application. "The door of a court is not barred because the plaintiff has committed a crime. The confirmed criminal is as much entitled to redress as his most virtuous fellow citizen; no record of crime, however long, makes one an outlaw. The court's aid is denied only when he who seeks it has violated the law *in connection with the very transaction as to which he seeks legal redress*. Then aid is denied despite the defendant's wrong. It is denied in order to maintain

respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination." (Emphasis added; footnote omitted.) *Olmstead* v. *United States*, 277 U.S. 438, 484, 48 S. Ct. 564, 72 L. Ed. 944 (1928) (Brandeis, J., dissenting); accord 4 Restatement (Second), supra, § 889.

Although the complaint contains a single allegation that, because of the defendant's negligence, the plaintiff has and will incur costs for mental health care necessary to his recovery and maintenance, he has made clear in his submissions to the trial court and this court that he is not advancing a negligence claim independent of his illegal conduct. Specifically, in response to both the defendant's motion to strike the complaint on the basis of the wrongful conduct rule and the trial court's decision striking the complaint solely on that basis, the plaintiff never asserted that, even if the wrongful conduct rule applies, his complaint states an independent basis for recovery to which the wrongful conduct rule does not apply. Indeed, the plaintiff's motion for reconsideration of the trial court's decision granting that motion and his briefs to this court both assume the propriety of the trial court's characterization of his claim as seeking damages for the legal consequences of his criminal acts and focus solely on application of the wrongful conduct rule. The plaintiff acknowledged at oral argument before this court that he did not assert in his briefs an independent basis for recovery to which the wrongful conduct rule does not apply. Therefore, in the present case, we simply conclude that the plaintiff cannot recover for mental distress and economic damages arising from the legal consequences of his admitted serious criminality.[10]

The judgment is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARELLA and ESPINOSA, Js., concurred.

[1] According to Judicial Branch records, after the trial court granted the defendant's motion to strike the plaintiff's complaint in which the plaintiff admitted to viewing child pornography, the plaintiff pleaded guilty to the charge of promoting a minor in an obscene performance in violation of General Statutes § 53a-196b. He was sentenced to five years imprisonment, execution suspended, followed by twenty years probation, and is listed on Connecticut's sex offender registry.

[2] To the extent that the plaintiff argues that his claim should be analyzed under the framework that this court applied in *Edwards* v. *Tardif*, supra, 240 Conn. 610, we disagree. The focus of *Edwards* was whether a patient's suicide was an act that broke the chain of causation between the defendant physicians' alleged malpractice and the patient's death. Id., 615. The case did not address the question of whether recovery would violate public policy, and, more importantly, the case did not involve an individual profiting from his or her own criminal wrongdoing. Although that case did address the question of foreseeability; id., 616–18; as we later explain in this opinion, we need not address that question in light of our determination that, in the present case, the defendant owed the plaintiff no duty.

[3] One jurisdiction has reached a contrary conclusion under facts similar to *Barker*, except that the action was brought against the injured minor's social hosts, concluding that barring recovery on the basis of the plaintiff's wrongful conduct "would itself offend a countervailing public policy to the extent it could also protect from possible liability those persons from whom

the firecrackers were obtained." *Flanagan* v. *Baker*, 35 Mass. App. 444, 449, 621 N.E.2d 1190 (1993). This jurisdiction does, however, apply the wrongful conduct rule where there is no strong countervailing public policy. See, e.g., *Ryan* v. *Hughes-Ortiz*, 81 Mass. App. 90, 94, 959 N.E.2d 1000 (2012) (barring recovery for injuries from gunshot wound that occurred when decedent attempted to steal handgun).

[4] Similarly, several states have enacted statutes barring tort recovery by plaintiffs whose injuries have resulted from their own illegal conduct, but in some instances have limited this bar to certain types of crimes. See Alaska Stat. § 09.65.210 (2012) (precluding recovery for personal injury or death as result of, inter alia, commission of felony or operating vehicle or craft while under influence of alcohol or drugs); Cal. Civ. Code § 3333.3 (Deering 2005) ("[i]n any action for damages based on negligence, a person may not recover any damages if the plaintiff's injuries were in any way proximately caused by the plaintiff's commission of any felony, or immediate flight therefrom, and the plaintiff has been duly convicted of that felony"); Ohio Rev. Code Ann. § 2307.60 (B) (2) (West 2004) (precluding recovery if plaintiff convicted of felony or misdemeanor of violence that was proximate cause of injury or loss); Or. Rev. Stat. § 31.180 (1) (a) (2013) ("[i]t is a complete defense in any civil action for personal injury or wrongful death that . . . [t]he person damaged was engaged in conduct at the time that would constitute aggravated murder, murder or a Class A or a Class B felony").

[5] The limitations applied to the wrongful conduct rule have been subject to criticism as fostering inconsistent results based on subjective line drawing and for failing to account for competing policy concerns. See *Dugger* v. *Arredondo*, 408 S.W.3d 825, 835–36 (Tex. 2013) (noting conflicts of applying broad rule, including possible slippery slope restricting access to judicial system and providing civil immunity to those who harm others "merely because the claimant was not in compliance with every law at the time of the tortious conduct"); J. King, "Outlaws and Outlier Doctrines: The Serious Misconduct Bar in Tort Law," 43 Wm. & Mary L. Rev. 1011, 1017–18 (2002) ("the doctrine is operationally dangerous because it requires the court to evaluate the plaintiff's conduct through a moral prism trained on an ever-changing social landscape and climate, resulting in the potential for selective and arbitrary application" [emphasis omitted]). Compare *Lemond Construction Co.* v. *Wheeler*, 669 So. 2d 855, 858, 861 (Ala. 1995) (holding minor son's intentional participation in illegal joy ride that led to his death did not preclude father from maintaining wrongful death action against construction company), with *Oden* v. *Pepsi Cola Bottling Co. of Decatur, Inc.*, supra, 621 So. 2d 955 (holding minor son's attempt to steal drinks by tilting vending machine that led to his death precluded father from maintaining products liability claim against soft drink company).

[6] In a few cases, courts have declined to apply the wrongful conduct rule to negligence claims against mental health care providers when the plaintiff lacked mental capacity at the time of the crime and thus could not have knowingly and intentionally committed the crime. See *O'Brien* v. *Bruscato*, 289 Ga. 739, 741–43, 715 S.E.2d 120 (2011) (declining to apply wrongful conduct rule because plaintiff was found to be incompetent to stand trial and claimed to lack requisite mental capacity to commit murder); *Boruschewitz* v. *Kirts*, 197 Ill. App. 3d 619, 623, 554 N.E.2d 1112 (declining to apply wrongful conduct rule because plaintiff did not base her claim on her own violation of criminal code due to her alleged insanity at time of crime), appeal denied, 133 Ill. 2d 552, 561 N.E.2d 686 (1990). In the present case, the plaintiff does not claim that he lacked the requisite mental capacity required to commit the crimes that prohibit the viewing and downloading of child pornography.

[7] The defendant claims that this court should decline to consider the plaintiff's arguments regarding these exceptions because the plaintiff did not advance them in his objection to the defendant's motion to strike. To the extent that the defendant is asserting a preservation argument, we disagree. The trial court expressly recognized that there are limited exceptions to the wrongful conduct rule in other jurisdictions but noted that "[t]hey are not discussed as none appear remotely applicable to the allegations in this case." Therefore, our consideration would not amount to a "trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 265, 828 A.2d 64 (2003).

[8] To the extent that the plaintiff argues that the trial court in a recent Superior Court case, *Charette* v. *Malone*, Superior Court, judicial district of New Britain, Docket No. CV-09-5014422-S (February 27, 2012) (53 Conn. L. Rptr. 629), implicitly relied on the statutory violation exception when it

denied the defendants' motion for summary judgment based on public policy grounds, we are not persuaded. In *Charette*, the trial court declined to "imply a wrongful conduct exception into the statutes governing liability for medical malpractice, because there is no basis for such an exception in the text of those statutes"; id., 630; and because "[t]he legislature has already taken steps to deter wrongful conduct through our tort compensation system, including the comparative fault statute." Id., 631. Therefore, the court did not rely on the statutory violation exception in reaching its decision, but instead appears to have assumed that only the legislature could place limits on a plaintiff's right to recover due to the plaintiff's wrongdoing. Because medical malpractice is predicated on a common-law action procedurally limited by statute, we disagree.

[9] We are unaware of any state that has refused to apply the wrongful conduct rule solely on the basis of the availability of common-law or statutory comparative negligence principles, as the dissent suggests would be appropriate. Two states have declined to apply the rule, however, in reliance on either comparative negligence principles *constitutionally* mandated; see *Sonoran Desert Investigations, Inc.* v. *Miller*, 213 Ariz. 274, 278–79, 281, 141 P.3d 754 (App. 2006); or such principles in conjunction with a statute providing limits to the application of the wrongful conduct rule. See *Dugger* v. *Arredondo*, 408 S.W.3d 825, 835–36 (Tex. 2013).

[10] As we previously have indicated; see footnote 6 of this opinion; the plaintiff does not allege that he lacks criminal responsibility for his actions under the facts and law. Therefore, we have no occasion to consider whether a plaintiff could recover for injuries arising from nonvolitional criminal conduct. We simply conclude that injuries arising from volitional criminal conduct cannot, as a matter of public policy, provide a basis for recovery.